UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| ORR AUTO, INC.<br>D/B/A ORR VOLKSWAGEN OF TEXARKANA<br><br>Plaintiff,<br><br>V.<br><br>AUTOPLEX EXTENDED SERVICES, LLC<br>D/B/A MOTOR VEHICLE SERVICES<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 5:24-CV-00029-RWS-JBB |

## PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION

Plaintiff Orr Auto, Inc. d/b/a Orr Volkswagen of Texarkana ("Orr Volkswagen" or "Plaintiff") moves the Court, pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116(a), and Federal Rule of Civil Procedure 65, for entry of a permanent injunction prohibiting Defendant Autoplex Extended Services, LLC d/b/a Motor Vehicle Services ("Autoplex" or "Defendant") from continuing to use Plaintiff's protectable name and marks. In support, Plaintiff shows the following.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This action arises from Autoplex's unauthorized use of the marks "Orr Volkswagen of Texarkana," "Orr Volkswagen," and "Orr" (the "Orr Marks") in direct-mail solicitations marketing competing vehicle service contracts to Plaintiff's customers and prospective customers. On November 26, 2024, the Court entered default judgment against Autoplex as to liability on all four counts: unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and unfair competition/passing off, trademark infringement, and unjust enrichment under Texas law. Dkt. No. 21. The Court bifurcated and reserved for later determination the issues of damages, costs, exceptionality, attorney's fees, and permanent injunctive relief. Dkt. Nos. 16, 21.

Orr Volkswagen operates a Volkswagen franchise in Texarkana, Texas. The Orr family has operated automobile dealerships under the surname "Orr" in the Texarkana region since the 1960s, and the "Orr" name has acquired secondary meaning identifying dealerships operated by the Orr family. Plaintiff recorded an assumed name certificate for "Orr Volkswagen of Texarkana" with the Texas Secretary of State on July 10, 2013, and has continuously sold vehicle service contracts to its customers since on or about January 31, 2014. Among the products Orr Volkswagen sells are vehicle service contracts. These are agreements under which a customer pays a fee for

future repair and maintenance services. Service contracts are a material and meaningful portion of Plaintiff's business.

Without Plaintiff's authorization, Autoplex reproduced the Orr Marks word for word in mailed solicitations. These mailers were designed to sell Autoplex's own competing service contracts to Orr Volkswagen's customers. As the Court has already adjudicated, this use "has created, and will continue to create, a likelihood of confusion and actual confusion in the minds of potential consumers" as to the source, affiliation, or sponsorship of Autoplex's products and services. Dkt. No. 21. Autoplex's infringement was neither isolated nor inadvertent. By its own verified admission, the mailings bearing the Orr Marks were sent on its behalf from on or about March 19, 2019 through March 29, 2025 (six years). Ex. 1 Def.'s Suppl. Resp. to Pl.'s First Interrogs. No. 3 (verified May 12, 2026). The conduct expanded geographically during the pendency of this suit and continued even after Autoplex received notice of this lawsuit and the default judgment. Dkt. No. 42 at 15; Dkt. No. 43 ¶ 35.

## II. LEGAL STANDARD

Section 34 of the Lanham Act empowers district courts to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, . . . to prevent the violation of any right of the registrant of a mark . . . or to prevent a violation under [15 U.S.C. § 1125(a)]." 15 U.S.C. § 1116(a). "A permanent injunction is the usual and normal remedy once trademark infringement has been found in a final judgment." *Diageo N. Am., Inc. v. Mexcor, Inc.,* 661 F. App'x 806, 813 (5th Cir. 2016). The Court has broad discretion to fashion relief that proscribes the wrongful conduct. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1126 (5th Cir. 1991).

A party seeking a permanent injunction must demonstrate: (1) actual success on the merits; (2) that it will suffer irreparable injury absent injunctive relief (monetary relief is inadequate); (3) that the threatened injury outweighs any harm the injunction would cause the defendant; and (4) that the injunction will not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013). By statute, "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction." 15 U.S.C. § 1116(a). Because liability has been conclusively established, each factor is readily satisfied here.

## III.  ARGUMENT AND AUTHORITIES

### A.  Plaintiff Has Actually Succeeded on the Merits.

The Court's entry of default judgment on liability conclusively establishes Plaintiff's success on the merits. Dkt. No. 21. The default judgment adjudicated that Autoplex used the Orr Marks in violation of 15 U.S.C. § 1125(a) and Texas law, and that its use has caused and will continue to cause a likelihood of confusion and actual confusion as to source, affiliation, or sponsorship. *Id.* A default judgment on liability satisfies the success-on-the-merits prong for a permanent injunction. *See, e.g.,  Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) (well-pleaded factual allegations are deemed admitted on default). The marks used by Autoplex are the exact marks used by Plaintiff, which alone satisfies the confusion finding. *See* Dkt. No. 17 at 13–14; *Bos. Prof'l Hockey Ass'n v. Dall. Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir. 1975).

B.  Plaintiff Will Suffer Irreparable Harm Absent a Permanent Injunction.

Having established a violation, Plaintiff is entitled to the statutory presumption of irreparable harm. 15 U.S.C. § 1116(a). Independent of the presumption, the Fifth Circuit recognizes that similar facts such as harm to reputation, goodwill, and the loss of control over one's mark constitute irreparable harm not adequately compensable in damages. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312–13 (5th Cir. 2008); *Emerald City Mgmt., L.L.C. v. Kahn*, 624 F. App'x 223, 224 (5th Cir. 2015). Three independent forms of irreparable harm are present here.

First, Plaintiff cannot control the nature or quality of the goods and services Autoplex sells under the Orr Marks, and this loss of control over its own mark and the goodwill it represents is itself irreparable harm. *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 696–97 (N.D. Tex. 2015). Second, Autoplex sells inferior products under the Orr Marks and dissatisfied purchasers will mistakenly attribute their experience to Plaintiff, injuring the reputation and goodwill Plaintiff has cultivated for more than a decade in the Texarkana market. Such reputational harm is difficult to quantify, cannot be corrected by a monetary award, and constitutes irreparable injury. Finally, because Autoplex targets the very customers of Orr Volkswagen using Orr Volkswagen's own name, Plaintiff loses sales and customers each time a consumer, actually confused, purchases Autoplex's competing product in the mistaken belief that it originates with or is sponsored by Plaintiff.

C.  Autoplex's Purported Voluntary Cessation Neither Moots Nor Defeats the Need for a

Permanent Injunction.

Autoplex has represented that it stopped using the Orr Marks. It first told the Court, after

retaining counsel, that it "voluntarily agreed to cease its allegedly infringing conduct until such

time as this matter is resolved," Dkt. No. 43 ¶ 34 (citing Dkt. No. 40 ¶ 71), and it has since asserted

in verified discovery that the word "Orr" "was last used by third party direct mail services on

March 29, 2025." Ex. 1 Def.'s Suppl. Resp. to Pl.'s First Interrogs. No. 3 (verified May 12, 2026).

Neither representation defeats Plaintiff's entitlement to a permanent injunction.

First, a defendant's voluntary cessation of challenged conduct does not moot a claim for

injunctive relief. It is well settled that "voluntary cessation of allegedly illegal conduct does not

deprive the tribunal of power to hear and determine the case." *United States v. W.T. Grant Co.*,

345 U.S. 629, 632 (1953). Otherwise, "[t]he defendant is free to return to his old ways." *Id.* The

burden to establish mootness on this basis is "formidable," and it rests entirely on the party

asserting it (Autoplex). *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Autoplex "cannot

automatically moot a case simply by ending its unlawful conduct once sued"; it must show that

the allegedly wrongful behavior "could not reasonably be expected to recur." *Id.*; *Friends of the

Earth, Inc. v. Laidlaw Envt. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Second, Autoplex cannot carry the burden that its conduct "could not reasonably be

expected to recur" by its own submissions which confirm it. Its cessation is expressly conditional

because it agreed to stop only "until such time as this matter is resolved," Dkt. No. 43 ¶ 34. This

is the opposite of the "absolutely clear" showing the law requires; a promise to refrain only for the

duration of litigation affirmatively signals an intent to remain free to resume. The later-supplied

March 29, 2025 date does not cure the problem. A bare, dated assertion that mailings stopped, mid-litigation, after judgment on liability, is a self-serving cessation that does not moot a claim for prospective relief.

Furthermore, Autoplex disclaims control such that any promise of a cessation cannot be credible. It repeatedly represents that the infringing mailings were created and sent by third-party vendors over whom it "lacks direct control," Ex. 1 Def.'s Suppl. Resp. to Pl.'s First Interrogs. No. 2. By attributing its infringement to an uncontrolled third party, Autoplex admits it cannot guarantee that misconduct will not resume.

Also, Autoplex's conduct after it was cautioned by the Missouri Department of Commerce and Insurance in 2021 that its use of a dealership's name "suggests deception," and expansion of its practices, is clear evidence that the conduct can reasonably be expected to recur. Dkt. No. 42-3.

Finally, voluntary cessation is not a substitute for an injunction. The entry of a judicial decree gives Plaintiff enforceable protections that an informal litigation promise does not. Where a defendant has infringed and caused confusion, and then merely professes that it has stopped the misconduct, public interest independently supports entry of the injunction.

D.  The Balance of Hardships Weighs Heavily in Plaintiff's Favor.

Any hardship to Autoplex is entirely of its own making and entitled to no weight. Autoplex has no legitimate right to use Plaintiff's name and marks, and an injunction requires nothing more than that it comply with federal and state law by refraining from conduct it was never entitled to undertake. *See* Dkt. No. 21. By contrast, Plaintiff faces continuing, irreparable injury to its name, goodwill, and customer relationships for so long as Autoplex remains free to invoke the Orr Marks.

An injunction that merely halts unlawful conduct imposes no cognizable hardship, and the balance tips decisively toward Plaintiff.

E.  A Permanent Injunction Serves the Public Interest.

"The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-227, 2020 WL 4016110, at \*17 (E.D. Tex. July 16, 2020). The public has a substantial interest in not being deceived or confused as to the source of goods and services. *Dickey's Barbecue Pit, Inc. v. Celebrated Affairs Catering, Inc.*, No. 4:17-cv-00127, 2017 WL 1079431, at \*4 (E.D. Tex. Mar. 22, 2017). That interest is heightened here, where the confusion operates on consumers responding to solicitations that mimic official warranty notices and where Autoplex's conduct has already drawn a state regulator's caution. Dkt. No. 42-3. An injunction protects the consuming public from precisely the deception the Lanham Act was enacted to prevent.

## IV.     BREADTH OF THE INJUNCTION.

Relatedly, the injunction requested should reach Autoplex's practice of inserting any automobile dealership's name into its vehicle-service-contract solicitations without authorization, because that practice is the very mechanism that produced the confusion the Court has already found, and because Autoplex has demonstrated that it will use a dealership's name, absent any affiliation. Autoplex's own verified discovery responses establish that it did not itself prepare or mail the offending solicitations; rather, it purchased "qualified leads" from a third-party vendor, Mala Group, Inc., which created the direct-mail advertisements and placed them in the United States mail on Autoplex's behalf. Ex. 1 Def.'s Suppl. Resp. to Pl.'s First Interrogs. Nos. 2, 5, 9,

11. Autoplex identifies Mala Group as the party responsible for "the marketing, advertising, and promotion" of its products, and as the participant in the decision "to use the word 'Orr,'" *id.* Nos. 9, 11. The 2021 Letter of Caution issued by the Missouri Department of Commerce and Insurance concerned the *same* solicitation format, in which "the large bold print on the top of the solicitation contain[ed] the name of the dealership where [the consumer] purchased her vehicle," and warned that "[t]he use of a dealership name by an unrelated third party to solicit and/or acquire business suggests deception." Dkt. No. 42-3. Autoplex received that warning, took no corrective action, and later deployed the identical device, substituting the name of a different dealership (Orr). An injunction limited to the literal marks "Orr," "Orr Volkswagen," and "Orr Volkswagen of Texarkana" would therefore leave Autoplex free to resume the adjudicated conduct against Orr's customers the moment it substitutes a different dealership's name. This would invite conduct that the injunction is intended to prevent and not give Plaintiff a "safe distance." *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 154 (5th Cir. 1985). Enjoining the unauthorized use of any dealership's name in Autoplex's vehicle-service-contract solicitations directed into Orr Volkswagen's market, which is defined as the 250-mile radius surrounding Orr Volkswagen's principal place of business in Texarkana, Texas, is no broader than necessary to protect the goodwill the Court has found Autoplex infringed, and it serves the public's recognized interest in not being deceived.

## V.  REQUESTED RELIEF

For these reasons, Plaintiff respectfully requests that the Court enter a permanent injunction substantially in the form of the proposed order submitted herewith, enjoining Autoplex and its officers, agents, servants, employees, attorneys, successors, and assigns, and all persons in active

concert or participation with them who receive actual notice of the order (Fed. R. Civ. P. 65(d)(2)), from:

(a) using the marks "Orr Volkswagen of Texarkana," "Orr Volkswagen," or "Orr," or any other name, mark, or designation confusingly similar thereto, in connection with the advertising, marketing, promotion, solicitation, offering, or sale of vehicle service contracts, extended warranties, or any other automotive-related product or service, in any medium, including direct mail, email, telephone, print, or electronic media;

(b) using the name of Orr Volkswagen of Texarkana, or of any other automobile dealership, in any solicitation or advertisement in a manner that states or implies an affiliation, connection, endorsement, sponsorship, or approval that does not exist;

(c) making any false or misleading representation of fact likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, affiliation, or approval of Autoplex's goods or services in relation to Plaintiff; and

(d) assisting, aiding, or abetting any other person or entity in engaging in any of the conduct enjoined above.

Plaintiff further requests that the Court order Autoplex, within thirty (30) days after entry of the injunction, to (i) destroy or permanently remove from use all marketing and solicitation materials in its possession, custody, or control that bear the Orr Marks or any confusingly similar designation; and (ii) file with the Court and serve on Plaintiff a written report, under oath, setting forth in detail the manner and form in which Autoplex has complied with the injunction, as authorized by 15 U.S.C. § 1116(a).

Plaintiff requests all other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

FLOYD LAW, PLLC
P.O. Box 5452
Texarkana, Texas 75505
Phone: (903) 306-0373
Fax: (870) 330-4196

By:   /s/ Cory J. Floyd
      Cory J. Floyd
      Texas Bar No. 24049365
      Email: cory@txklawyers.com

ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that on July 15th, 2026, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF electronic filing system and/or electronic mail, including Christopher A. Thornton, Briscoe Wulff & Williams, LLP, 501 1st Capitol Dr., St. Charles, MO 63301.

/s/CoryFloyd
Cory J. Floyd